Good afternoon, Illinois Appellate Court, 1st District Court is now in session, the 5th Division, the Honorable Justice Mathias DeLort presiding, case number 1-8-2371, People v. Kenneth Thompson. Good afternoon, welcome to the Illinois Appellate Court. We're going to ask the lawyers who are going to argue today to introduce themselves and tell us who you represent. Beginning with the appellant. Good afternoon, Your Honor. My name is Catherine Oberer from the Office of the State Appellate Defender. Appearing today on behalf of the appellant, Mr. Kenneth Thompson. And for the state? Good afternoon, Your Honors. Assistant State's Attorney Dan Pibobarczyk on behalf of the people of the state of Illinois. Thank you very much, Counsel. We will allot about 15 minutes for each side. The defense will have an extra five minutes for rebuttal. Please remember we have read the briefs and that we are familiar with the facts of the case. With that, Ms. Oberer, you may proceed when you're ready. Thank you, Your Honor. Good afternoon and may it please the court. I am again appearing today on behalf of the appellant, Mr. Kenneth Thompson. While there are several issues that are raised in the briefs, I plan to focus today on the first issue, the sufficiency issue, and I'm happy to answer any other questions that the panel may have. The issue before this court is whether the state proved beyond a reasonable doubt that the complainant suffered great bodily harm. The state did not, and therefore an aggravated battery conviction here is improper. When distinguishing between bodily harm and great bodily harm in Illinois, courts look at several pieces of information. The actual injury that is received, the nature and extent of that injury, and additionally the treatment required. Here, all of those indicators suggest that the complainant suffered bodily harm, but not great bodily harm. First, the injury itself. The state provided evidence that the complainant suffered bruising, and additionally that the complainant suffered a laceration. These injuries are able to be viewed by this court in the photographs that are part of the record. States Exhibit 2, 6, and 7 show this cut and this bruising, and our Supreme Court in People v. Mays said that these are examples of injuries that are bodily harm. But not necessarily great bodily harm. When moving on to look at the extent of the injury, the evidence also suggests that there was not great bodily harm here. The parties stipulated that that laceration, that cut was two inches in length, and there was evidence of a witness that it bled. But importantly, that witness denied that there was a lot of blood. It's not something that was bleeding all over the place, and it is something that the complainant was actually able to cover himself. This is something that the court can observe on the video of the incident. What about the fact that an ambulance was called and he was treated by paramedics, and then several days later there was still a bandage? Yes, so that goes to the treatment that was required here. Really, as Your Honor has just stated, that's all the evidence of the treatment that the state provided. The parties stipulated that he was treated in the ambulance, but they don't say what that treatment was. And then Detective Schmidt testified that a couple of days later, we don't know exactly how many, that there was a bandage. And that would suggest that there was bodily harm here, but that it did not rise to the level of great bodily harm. In determining whether this was great bodily harm or simply a lesser quality of harm, why can't we consider the fact that it was a knife of a certain length and aimed at the neck? So again, the cases specifically in Inouye J.A. and Inouye Buck from this court really are focusing on the injury that actually was caused and the extent of that injury that was caused. So when you look at those factors, it suggests that it was more like bodily harm rather than great bodily harm. We have evidence of how the complainant reacted to that injury. It's visible on video and his reaction suggests that it was something more minor. You can see him walking around immediately after the incident. You can actually see him holding something up to the area where the injury was and able to completely cover it. He's able to talk to others, to walk around, to use his phone, to get a drink. All of these things suggest that he was suffering from bodily harm, but not great bodily harm. We also don't have evidence from the state here that there was any additional pain or suffering caused to the complainant, as the state did not call him to testify here. So looking at those factors from the opinions in Inouye J.A. and Inouye Buck, the injury itself, the nature and extent of the injury, and the treatment that was required, much of which this court can review in the photographs and the videos, all of this suggests that there was not evidence that great bodily harm was actually caused in this case. In order to remedy this error, that conviction for aggravated battery causing great bodily harm is the only final conviction here. Where the state did not prove that there was great bodily harm, this court could reduce that charge to simple battery, and then that would be the final conviction in this case, as that is the final count that is before this court that Mr. Thompson was sentenced on. Mr. Thompson would be asking this court not to exercise its jurisdiction to remand for resentencing, or I guess initial sentencing, on these other non-final counts, and just leave them non-final, just as they are now, for judicial economy reasons. The record that has already been made... Do you have a question? Do I recall correctly that you said in your brief that he's already served the maximum sentence for simple battery? Yes, that is correct. The maximum sentence is one year, and this offense, he was convicted in 2018. We're now in 2020, so he has served that maximum sentence. If this court were to reduce the charge to simple battery, which we think is appropriate, serve that sentence and then some. Again, he would be asking this court not to exercise its jurisdiction to remand for sentencing on the other counts, just for judicial economy reasons, where there's not sufficient evidence in the record to support those charges either. That would be a count three, a charge of aggravated battery causing permanent disfigurement. The state didn't introduce any evidence at all of any permanent injury to the complainant. There's only evidence of the injury on the day that it occurred, and then a couple days later, as I mentioned earlier, but nothing at all after that. Then that fourth count, oh, did you have a question? I'm sorry, I will have a question when you finish. Okay, thank you. Yes, and then that fourth count, as I was mentioning, was a charge of aggravated battery with a deadly weapon. There's very limited evidence in the record here about what the weapon actually was.  It's only that Thompson indicated that he used a, quote, small pocket knife, approximately three inches in length. And our Supreme Court and People v. Dwyer stated that small pocket knives are not per se deadly weapons. And the state didn't introduce any other evidence about that weapon to show that it was something that was capable of producing death. So there wouldn't be sufficient evidence either to suggest that it would be economical to remand for sentencing on that count either. Yes, and if your Honor did have a question on that point, I'd be happy to answer. Your arguments in the guise of it wouldn't be economical really go into whether there was sufficient evidence to sustain the finding of guilty in those other counts. But those counts are not, we do not have jurisdiction over those counts because there's no sentence other than to remand them for sentencing. Is that correct? Yes, I want to be clear. I'm not asking the court to reverse those counts or do anything with them because the court wouldn't have jurisdiction to do that. Just to leave them as they are right now as non-final convictions because there's not sufficient evidence to support those. So it's not economical to remand for sentencing on that charge when this court does have a final conviction before it, that it can review, that it can reduce to a simple battery, which would leave. There's not just an absence of a judgment. There would be a, you know, that charge of simple battery that could be convicted of. And that would be the release that Mr. Thompson is asking for here. And if there are no further questions on the sufficiency argument, I would be happy to answer any other questions the court may have. And if there are no other questions, again, Mr. Thompson would submit that there's not sufficient evidence to support that charge of aggravated battery causing great bodily harm. So this court should reduce that to simple battery. And then if appropriate, consider the other alternate arguments in the briefing. Thank you. Are there any other questions from the panel? Hearing none, Ms. Obra, do you rest on the brief as to the other issues? Yes, Your Honor. All right. Thank you. Mr. Pivovarchuk, you may proceed when ready. Thank you, Your Honor. Once again, Dan Pivovarchuk on behalf of the people. I'll also focus on the first issue. And may it please the court. The people presented precise and uncontested evidence in this case of the victim's injuries. Viewing this evidence in the light most favorable to the people, a reasonable trier of fact could have concluded that the victim suffered great bodily harm. The defendant's violent attack of the victim was dramatically detailed by security video from the gas station where the victim was working at the time of the attack. The defendant was dragged out of the store and the defendant dragged the victim out of the store and bit him on the chest hard enough to leave a bruise that was visible and photographed several days later. The defendant then stabbed the victim in the throat with a three-inch pocketknife. At that point in the video, the victim can be seen staggering backwards and clutching his throat. When the victim's coworker, Ms. Cousins, saw the wound, she immediately summoned the paramedics. In the video, the victim can be seen grimacing and maintaining pressure on that wound until the paramedics lead him away. Counsel, the judge specifically said that she found the defendant guilty of aggravated battery-based, quote, in regards to the action of the bite mark and puncture with the pocketknife, close quote. Since the bite mark wasn't charged in the charging instrument, just the knife was, how does that affect our analysis? Is it fair game for her, for the judge, to have thrown the bite mark in there? Absolutely, Your Honor. I think it would fall into an issue of surplusage. I think that there was never any confusion about what the defendant was on trial for, so that information about it being related to the stabbing wasn't listed as an element of the offense. The elements and the statute that he was charged under were all there. The inclusion of that language about the stabbing was additional surplusage, and it was all absolutely in the discovery. The defendant had the video. The defendant had a copy of the photographs with the bite marks on it, so there was no confusion about what the defendant was on trial for. It was absolutely appropriate for the court to consider all of the injuries that the victim suffered at the hands of the defendant over a very short period of time. There was not a significant separation between the time when the bite happened and when the stabbing happened. While we're on the topic of the video, like I said, I would absolutely disagree with opposing counsel's characterization of the video as showing that the victim didn't suffer any effects of this stab wound. Certainly, when you watch the video, you can see the victim staggering back from the defendant after the stabbing happens, and he never gets close to the defendant again for the rest of the time that the defendant remains at the gas station parking lot area where the stabbing happened. As I said before, you can see the victim after the defendant leaves in the gas station grimacing and maintaining pressure on that wound up until the point where the paramedics lead him away. As I mentioned also, there is a stipulation that it was a two-inch laceration to the left side of his throat, and People's Exhibit 2, the photograph from the hospital, does show a deep red puncture wound at the top of the victim's throat. With regard to what constitutes great bodily harm, the location of this wound is absolutely crucial. A stab wound to the throat is greater and more serious than a mere laceration because it's potentially life-threatening. Recognizing the significance of the stab wound's location, the victim's coworker, Ms. Cousins, observed that the stab wound was, quote, near his veins, unquote, and the trial court itself commented that, quote, thankfully no arteries were hit, unquote. On that point, the People's case, People v. Virgil, cited in People's brief, is on point because in Virgil, the victim also suffered a cut to her throat. In that case, it bled profusely and required four stitches, and in that case, this court found that nothing in the evidence suggested that the victim only suffered bodily harm. So, based off of the fact that nothing in that evidence suggested that the victim only suffered bodily harm, the trial court's refusal to instruct the jury on simple battery was upheld, and the defendant's aggravated battery great bodily harm conviction was affirmed. To reverse the defendant's conviction in this case, essentially this court would have to find that the opposite is true. This court would have to find that nothing in the evidence before it supports the trial court's finding that there was great bodily harm. Considering the similarities in the location of the injury, that really is a much, much different finding that would be necessary, and Virgil really does support the affirming of the trial court's finding. Specifically, with regard to the law, the victim's injuries, whether or not they amount to great bodily harm is absolutely a question of fact, and this court is not to substitute its own judgment for that of the trier effect. So, the issue is whether any reasonable trier effect could have believed it was great bodily harm. Defendant's cases, none of them at all, defendant hasn't presented a single case where a finding of great bodily harm was reversed despite evidence of the quality presented in this case. In Vuck, the trial court explicitly concluded that all of the prosecution's witnesses were lying. So, its finding of great bodily harm in that case was not based on any credible evidence at all. In J.A., the injury was a single stab wound to the shoulder with no evidence of its size or even if it bled. So, these cases upon which the defendant relies simply are not similar to the quality of evidence that was presented in this case where there was video, where there was photographs, where you had eyewitness testimony of the stabbing, and these cases simply do not support reversal in this case. Finally, with regard to remand, if this court does find that great bodily harm was not proven, the defendant did concede in his opening brief that this court has authority to remand for resentencing on the merged counts, and that would be the appropriate thing to do. The people's brief pointed out that the defendant's argument against remand violated Relaford because it examined the sufficiency of unsentenced convictions. People maintain that that analysis of the unsentenced convictions is absolutely what Relaford prohibits. However, regardless of the people's position, this court absolutely has the power in order to be able to, as conceded by the defendant, to be able to remand for resentencing on these merged counts. I guess my final point would simply be to address the Supreme Court decision in Mays, which opposing counsel mentioned. Simply put, Mays did not define what great bodily harm was, and it certainly did not say that injuries like the ones here could not qualify as great bodily harm. People v. Moore, which is cited in the state's brief, points out that this is a misreading of Mays. Mays was distinguishing between bodily harm and insulting and provoking contact, and in so doing, it described all varieties of bodily harm, minor, great, and in between. One of the things that Mays included in its description of bodily harm was permanent physical pain and permanent damage to the body. Those things absolutely are going to be more than just simple battery bodily harm. So Mays does not support the defendant's argument for a reversal of the defendant's conviction in this case. If there are no questions as to this issue or to any of the other issues, in that case... Any panel members have questions? Counsel, one of the factors in determining whether there's great bodily harm is the pain and suffering that's involved here, but we do not have the victim testifying. Would that prevent a finding of great bodily harm? It should not prevent a finding of great bodily harm, Your Honor. Certainly, it is the case that under the circumstances here, it would appear that the victim was outside of the power of the court subpoena power. For whatever reason, the defendant was not available to testify. However, that isn't a automatic circumstance that would prevent finding of great bodily harm. In fact, any sort of argument that something automatically isn't great bodily harm, whether it's lacerations or whether it's the victim not testifying. All of those arguments are going to be highly suspect because findings of great bodily harm is an issue of fact, not a question of law. When you start saying you can't have certain things in the legal... Once you start legally defining great bodily harm like that and excluding things specifically, that does get outside of the realm of an issue of fact. It becomes a question of law. Without the victim's testimony, there was still evidence that the victim was injured. As I said, the video shows what happened. It shows the stabbing, it shows the biting, it shows the victim's reaction. The victim does not have to be on the ground writhing in agony in order for this to be great bodily harm. With all the evidence presented here, including photographs of the injuries, including a video of the actual attack, including eyewitness testimony from the co-worker of the victim, this is more than sufficient to find that any reasonable trier of fact could have concluded, as the trial court did, that the victim suffered great bodily harm. Any other questions from the panel? Counsel, thank you. In that case, the people asked for the reasons in our briefs, as well as these here, to affirm the defendant's conviction. Thank you. Thank you. Ms. Ober, you have five minutes. Thank you, Your Honor. To address the counsel's argument about great bodily harm first, and to whether it proves that, getting back to Your Honor's original question, the focus is on the actual injury that was caused here, rather than Mr. Thompson's behavior. That's stated in INRI JA, in INRI VUC, and in the Lopez-Bonillo case that the state actually cites in its brief. So when you're focusing on that, we have evidence of a bruise, which Your Honor brought up. The court in INRI JA said that bruises alone are not things that automatically would amount to great bodily harm, and there's no more information that the state provided about that bruising that would suggest that it rose to the level of great bodily harm here. There also was, I believe, a question about the location of the wounds. I'm not aware of any case law that says a wound to a specific location would automatically indicate that there was great bodily harm. It's fact-specific. Those injuries, again, are photographed. There's something that this court can view in the state's exhibits. This court can see the video, State's Exhibit 5, and they can see specifically the complainant's reaction to the injury. They can see that he reacted in a manner that does not suggest that there was great bodily harm. We're not disputing that there was no injury at all. It's just his reaction was relatively minor. I also don't believe there's any blanket rule that he would have to testify about any pain or suffering cause, but it's a factor that this court has looked at. And where we don't have evidence of any ongoing pain or suffering suggests that the injury is more like bodily harm and not great bodily harm. As an example, in the People v. Mays case, showing lacerations and bruises are bodily harm and not great bodily harm. To address the other counts, I don't believe that the state has asked for any sort of remand in its briefing on these other charges. In regards to Relaford, the Supreme Court stated that this court would have jurisdiction to remand for sentencing, but it absolutely did not require remand for sentencing. I guess the difference between this case and Relaford is this court could reduce that final conviction, aggravated bodily harm, to simple bodily harm. And that would be the final conviction that we would have here. And there would be no further action that would be required to have a final conviction in this case. And if the court has no further questions, Mr. Thompson would ask the court to reverse his aggravated bodily harm conviction and reduce it to simple bodily harm. And consider the other alternative arguments in the briefing. Thank you. Any questions from the panel for the defendant? Hearing none, then the matter will be taken under advisement. And the Zoom session will terminate and then the panel will reconvene in the other private Zoom session for deliberations. Thank you very much.